# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Scottsdale Insurance Company,

                    Plaintiff,

          v.                                        **MEMORANDUM OPINION
                                                    AND ORDER**

Wohlsol, Inc. d/b/a Old No. 1 Bar &                 Civil No. 04-4980 ADM/RLE
Grill, Melissa Jo Johnson, Gregory
Johnson, and Laurie and Rodney
Johnson, individually and as trustee for
the next of kin of Michael Thomas
Johnson,

                    Defendants.

_____

Paula Weseman Theisen, Esq. and Dorothy Jaworski Paxton, Esq., Meagher & Geer P.L.L.P.,
Minneapolis, MN, argued for and on behalf of Plaintiff Scottsdale Insurance Company.

Brian Wojtalewicz, Esq., Wojtalewicz Law Firm, Ltd., Appleton, MN, argued for and on behalf
of Defendants Melissa Jo Johnson, Gregory Johnson, and Laurie and Rodney Johnson,
individually and as trustee for the next of kin of Michael Thomas Johnson.

Amy J. Doll, Esq., Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Morris, MN, argued for
and on behalf of Defendant Wohlsol, Inc. d/b/a Old No. 1 Bar & Grill.[1]

_____

## I. INTRODUCTION

On August 29, 2005, oral argument before the undersigned United States District Judge

was heard on Defendants Melissa Jo Johnson, Gregory Johnson, and Laurie and Rodney

Johnson, individually and as trustee for the next of kin of Michael Thomas Johnson's

("Johnsons") Motion for Certification to Minnesota Supreme Court [Docket No. 18]. On

---

[1] Amy J. Doll appeared by phone at the Motion for Certification hearing. She was unable
to appear at the Summary Judgment hearing, and Brian Wojtalewicz represented the Defendants'
position.

September 20, 2005, oral argument was heard on Plaintiff Scottsdale Insurance Company's ("Scottsdale" or "Plaintiff") Motion for Summary Judgment [Docket No. 22].  In its Complaint [Docket No. 1], Plaintiff requests a declaratory judgment that the $100,000 "Each Common Cause Limit" in the insurance contract between Plaintiff and Defendant Wohlsol, Inc. d/b/a Old No. 1 Bar & Grill ("Wohlsol") applies in this case, and defines the limit of Scottsdale's liability on Wohlsol's behalf in the underlying wrongful death action between Wohlsol and the Johnsons. Defendants Johnsons [Docket No. 4] and Wohlsol [Docket No. 8] counterclaim in response for a declaratory judgment that the $300,000 annual "Aggregate Limit" in the insurance contract between Scottsdale and Wohlsol is applicable.

For the reasons set forth herein, Defendants' Motion for Certification to Minnesota Supreme Court is denied.   Plaintiff's Motion for Summary Judgment is granted.

## II. BACKGROUND

Wohlsol, Inc. operates the Old No. 1 Bar & Grill located in Morris, Minnesota, and is insured under a liquor liability policy issued by Scottsdale.  Paxton Decl. 2 [Docket No. 28] Ex. 3.  The Johnsons reside in the state of Minnesota and are family members of the deceased Michael Thomas Johnson ("Michael"): Melissa Jo Johnson is Michael's sister, Gregory Johnson is Michael's brother, and Laurie and Rodney Johnson are Michael's parents.  Paxton Decl. 1 [Docket No. 25] Ex 1.

On January 5, 2002, Wohlsol allegedly provided alcoholic beverages to twenty-year-old Dustin Hesse ("Hesse").  Paxton Decl. 1 Ex. 2.  At approximately 12:20 a.m. on January 6, 2002, Hesse, the driver, and Michael were involved in a single car accident.  Id.  Michael died from injuries sustained in the car accident.  Id.  On December 4, 2003, the Johnsons commenced a

2

wrongful death/dram shop lawsuit in Minnesota state court against Wohlsol.  Paxton Decl. 1 Ex. 1.  Wohlsol was insured under Scottsdale's liquor liability policy.  Paxton Decl. 2 Ex. 3.  The insurance policy provides for liability limits as follows: $100,000 for an "Each Common Cause Limit" and $300,000 for an "Aggregate Limit."[2]  Id. at 8.  Scottsdale has defended the wrongful death/dram shop lawsuit on Wohlsol's behalf.  Compl. ¶ 15.

Subsequently, a dispute arose among the parties regarding the limits of Scottsdale's liability: Scottsdale believes its liability is limited to the $100,000 "Each Common Cause Limit" and both the Johnsons and Wohlsol believe Scottsdale is liable up to the $300,000 "Aggregate Limit."  Compl. ¶¶ 16, 17.  As a result, Scottsdale commenced a declaratory judgment action regarding the limit of liability, and these motions followed.

### III. DISCUSSION

#### A.    Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec.

---

[2] The Supplemental Declarations actually state an Aggregate Limit of $100,000.  Scottsdale avers that the $100,000 figure was a typographical error, and that as soon as the error was discovered, a corrective endorsement was issued to reflect the actual value of the Aggregate Limit, $300,000.  Defendants Johnsons and Wohlsol allege wrongdoing on the part of Scottsdale, suggesting that Scottsdale was attempting from the beginning to limit its aggregate liability to an amount less than that required by statute.  Scottsdale issued its corrective endorsement one week after Michael's death.  Scottsdale now concedes that the correct Aggregate Limit amount is $300,000 and further examination of the timing of the issue of the corrective endorsement is not necessary to a determination of this case.

3

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Motion for Certification to Minnesota Supreme Court**

In their Motion for Certification to Minnesota Supreme Court, the Johnsons joined by Wohlsol ask that the following questions be certified to the Minnesota Supreme Court: "[i]s a 'common cause' limitation of $100,000 illegal for Minnesota dram shop insurance coverage?  If so, are the defendants here entitled to the higher available coverage of $300,000?"  The Johnsons strongly argue what the answer should be to these questions but direct little attention to why these particular questions are appropriate for certification.

Scottsdale responds by stating that the Johnsons' motion for certification should be denied as untimely.  Magistrate Judge Erickson's pre-trial scheduling Order of April 5, 2005, required all non-dispositive motions in this case to be heard prior to August 1, 2005.  The Johnsons waited until July 7, 2005 to file the motion for certification, which resulted in a motion hearing scheduled for August 29, 2005 and overlapping deadlines between dispositive and non-dispositive motions.  Furthermore, Scottsdale asserts the Johnsons have not satisfied the requirements for certifying a question to the Minnesota Supreme Court because the proposed questions for certification will not be determinative of the issues and there is a statute that

4

controls the outcome in this case.

When there is doubt as to local law, the federal court is not required to certify the issue to the state supreme court.  See Lehman Brothers v. Schein, 416 U.S. 386, 390-91 (1974).  Rather, use of the certification procedure "rests in the sound discretion of the federal court."  Id. at 391; Allstate Insurance Co. v. Steele, 885 F. Supp. 189, 193 (D. Minn. 1995).  The Defendants' Motion for Certification is denied because it is untimely and does not present an issue for certification.  Minn. Stat. § 480.065, subd. 3 states: "[t]he supreme court of this state may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state."  The outcome of this particular dispute rests primarily on an interpretation of Minn. Stat. § 340A.409.  Because the construction of a Minnesota state statute controls the outcome of this case, the Court will decline to exercise its discretion to certify and instead will rely on standard principles of statutory construction.

## C.    Motion for Summary Judgment

Plaintiff Scottsdale makes three arguments in support of its Motion for Summary Judgment.  First, Plaintiff argues that Defendants erroneously allege a violation of Minn. Stat. § 340A.409, subd. 1, which regulates liquor license applicants, not insurance companies.  Second, Plaintiff avers that Defendants misinterpret section 340A.409 as requiring a "stacked" or "cumulative" total minimum limit of $210,000 for an insurance policy satisfying a liquor licensee's financial responsibility requirement, rather than a $100,000 minimum limit.  Third, a holding that the statute requires cumulation of the minimum limits for each separate component

5

of injury would amount to an advisory opinion in this case, as under the Defendants'

interpretation of the statute, they would be entitled to a limit of $60,000 rather than the $100,000

amount provided for in Scottsdale's policy.[3]  Defendants Johnsons and Wohlsol respond by

arguing that the Court should not view the $100,000 cash or securities deposit option for

satisfying a liquor license applicant's financial responsibility of Minn. Stat. § 340A.409 as

informing the minimum limit required in the statute's insurance option.

     This case first and foremost involves a matter of contract interpretation.   Thommes v.

Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002) ("It is well-established that general

contract principles govern the construction of insurance policies, and that insurance policies are

to be interpreted to give effect to the intent of the parties.").  Unambiguous language in an

insurance contract should be interpreted according to its "plain and ordinary meaning."  Id. at

880.  Several provisions in the Scottsdale insurance policy are relevant to determining the extent

of Wohlsol's insurance coverage.  These provisions are unambiguous and susceptible to a plain

language interpretation.  First, Section One states that "[w]e will pay those sums that the insured

becomes legally obligated to pay as damages because of 'injury' to which this insurance applies

if liability for such 'injury' is imposed on the insured by reason of the selling, serving, or

furnishing of any alcoholic beverage . . . but [t]he amount we will pay for damages is limited as

described in . . . Section Three."  Paxton Decl. 2 Ex. 3 at 9.  Section Three provides as follows:

---

     [3] Scottsdale avers that the Johnsons would only be entitled to $60,000 under their own interpretation of the statute because under the terms of the statute, the minimum limit applicable to "bodily injury" to any one person is $50,000 and the minimum limit applicable to property damage is $10,000.  The Johnsons concede that they are not seeking damages for loss of means of support, the only other type of injury mentioned in the statute.  The Johnsons also seek pecuniary damages but there is no minimum limit for pecuniary damages specified in the statute.

(1)     The Limits of Insurance shown in the Declarations and the rules below fix the
        most we will pay regardless of the number of:
        a.      Insureds;
        b.      Claims made or "suits" brought; or
        c.      Persons or organizations making claims or bringing "suits."
(2)     The Aggregate Limit is the most we will pay for all "injury" as the result of the
        selling, serving or furnishing of alcoholic beverages.
(3)     Subject to the Aggregate Limit, the Each Common Cause Limit is the most we
        will pay for all "injury" sustained by one or more persons or organizations as the
        result of the selling, serving or furnishing of any alcoholic beverage to any one
        person.

Id. at 11.  Next, in Section Five, injury is defined as "all damages, including damages because of

'bodily injury' and 'property damage,' and including damages for care, loss of services or loss of

support."  Id. at 13.  Finally, in the Supplemental Declarations, the Each Common Cause Limit is

listed as $100,000 and the Aggregate Limit is listed as $300,000.  Id. at 8.

        The language of the policy clearly states that Scottsdale will pay at most $300,000 for all

"injury" resulting from the sale of alcoholic beverages, except that $100,000 is the most that

Scottsdale will pay for all "injury" resulting from the sale of alcohol to any one person.  In this

case, all "injury" to the Johnsons is the result of Wohlsol's sale of alcohol to one person, Dustin

Hesse.  "Injury" as defined in the policy encompasses all of the separate components of injury,

and Scottsdale concedes that "injury" includes pecuniary damages.  Therefore, the maximum

amount the Johnsons can recover under the policy in this case is $100,000.  This conclusion,

however, does not end the analysis.

        The next step requires the Court to examine whether this construction of the insurance

policy comports with state laws controlling insurance.  "Parties are free to contract as they

desire, and so long as coverage required by law is not omitted and policy provisions do not

contravene applicable statutes, the extent of the insurer's liability is governed by the contract

7

entered into."  Thommes, 641 N.W.2d at 882, citing Am. Family Mut. Ins. Co. v. Ryan, 330 N.W.2d 113, 115 (Minn. 1983).  The Johnsons have sued Wohlsol in state court under Minn. Stat. § 340A.801, which gives individuals a right of action against bar owners who illegally sell alcohol to intoxicated persons who cause injury to others.  The Johnsons and Wohlsol now argue that Minn. Stat. § 340A.409, subd. 1 applies to Scottsdale and requires insurance companies to issue bar owners policies with a minimum limit of $210,000, covering $100,000 for bodily injury, $10,000 for property loss, and $100,000 for loss of means of support.  However, as Scottsdale rightly argues, Minn. Stat. § 340A.409 does not apply to Scottsdale because the statute regulates liquor license applicants, not insurers.

The statute states that "[n]o retail license may be issued, maintained, or renewed unless the applicant demonstrates proof of financial responsibility with regard to liability imposed by section 340A.801."  Minn. Stat. § 340A.409, subd. 1.  The statute then gives liquor license applicants three different ways in which to satisfy the financial responsibility requirement:

> (1)    a . . . insurance policy . . . providing at least $50,000 of coverage because of bodily injury to any one person in any one occurrence, $100,000 because of bodily injury to two or more persons in any one occurrence, $10,000 because of injury to or destruction of property of others in any one occurrence, $50,000 for loss of means of support of any one person in any one occurrence, and $100,000 for loss of means of support of two or more persons in any one occurrence;
> (2)    a bond of a surety company with minimum coverages as provided in clause (1); or
> (3)    a certificate . . . that the licensee has deposited with the commissioner of finance $100,000 in cash or securities . . . having a market value of $100,000.

Id.  The statute also states that "[a]n annual aggregate policy limit for dram shop insurance of not less than $300,000 per policy year may be included in the policy provisions."  Id.  The purpose of the statute is to condition the grant of a liquor license to applicants who can satisfy certain financial responsibility requirements, in one of three different ways.  The statute does not speak

directly to insurance companies, or require insurance companies to insure dram shops in specified amounts.  While the statute will certainly have the indirect effect of causing insurance companies to issue policies with at least the minimum amount of insurance required by law, this particular statute places the onus on liquor licensees to establish and prove their financial responsibility, and failure to do so can not result in an insurance company violating this statute.

Even if this statute is construed to regulate insurance companies, Scottsdale could not be found to have violated it because Scottsdale did issue an insurance policy with the minimum limits required by law.  The Johnsons and Wohlsol argue that Minn. Stat. § 340A.409 requires "stacking" or "cumulation"—essentially, that the specified amounts for each separate component of damages named in the statute must be added together to arrive at the total minimum limit. This interpretation would require adding together $100,000 for bodily injury, $10,000 for property damage, and $100,000 for loss of means of support, for a total of $210,000.  Scottsdale, on the other hand, argues that the minimum limit required by the statute is $100,000, and cites in support the $100,000 cash/security deposit option of compliance with the statute as well as the Department of Public Safety's interpretation of the statute.

There are no Minnesota cases directly interpreting this particular statutory provision.[4]

_____

[4] All parties compare and contrast two Minnesota Court of Appeals cases to the instant case.  See Britamco Underwriters Inc. v. A & A Liquors of St. Cloud, 649 N.W.2d 867 (Minn. Ct. App. 2002) and Brault v. Acceptance Indem. Ins. Co., 538 N.W.2d 144 (Minn. Ct. App. 1995).  While both cases could be understood as sanctioning an interpretation of Minn. Stat. § 349A.409 that requires separate minimum limits for each distinct component of damages, which can then be added together to arrive at one total minimum limit, neither case squarely addresses the issue.  In addition, both cases are distinguishable from the instant case because the insurance policies in Brault and Britamco specifically listed separate limits for each distinct component of damages, while the Scottsdale policy lists one limit for all injury caused by serving alcohol to one person.  In addition, the Johnsons and Wohlsol rely on Brault and

There is also nothing in the legislative history to indicate what result the legislature intended with this provision.  While the statute is arguably susceptible of either meaning, it lends itself more readily to the interpretation that a liquor license applicant choosing to satisfy the financial responsibility requirement by acquiring insurance must obtain an insurance policy with a minimum limit of $100,000 rather than $210,000.  While the clauses concerning insurance and surety bonds do not precisely delineate the minimum amount of financial security that a liquor license applicant must obtain, the third clause explicitly states that a liquor license applicant satisfying the financial responsibility requirement with cash or securities must deposit $100,000.  If the statute were read to require a minimum of $210,000 with respect to insurance, then liquor licensees that choose to satisfy the financial responsibility requirement with insurance would have a greater dollar amount available to injured persons than those that choose to satisfy the financial responsibility requirement with a cash or securities deposit.  The legislature could not have intended such an incongruous result.[5]  An insurance policy limit of $100,000, such as the "Each Common Cause Limit" in the Scottsdale policy, provides the minimum coverage that is

_____

Britamco for the proposition that Scottsdale has violated the statute by not listing a separate, specific limit for pecuniary damages.  However, the statute does not require Scottsdale to do so, and in any event, Scottsdale has conceded that the Wohlsol insurance policy covers pecuniary damages.

[5] Case law cited by the Defendants does not dictate a contrary result.  Defendants Johnsons cite Shank v. Fidelity Mut. Life Ins. Co. for the proposition that if a provision in an insurance policy violates a statute in theory, then the entire provision is tainted with illegality and void on the grounds of public policy, even if the supposed violation does not impact the case at hand.  21 N.W.2d 235 (Minn. 1945).  Shank does not apply here because Scottsdale has not violated the statute at issue.  However, even if Shank was relevant, and although it has never been expressly overruled, it is a sixty-year-old decision that essentially counsels the court to render an advisory opinion on public policy grounds, which is something this Court can not and will not do.

required by statute, because none of the separate components of damage listed in the statute require an amount greater than $100,000 to satisfy liability.[6]  Because the statute does not require a minimum limit of $210,000, and because the "Each Common Cause Limit" of $100,000 is what Wohlsol and Scottsdale contracted for, the Each Common Cause Limit of $100,000 applies to the Johnsons/Wohlsol wrongful death/dram shop action.  The statute does not require insurers to specify a minimum limit for each individual category of damages and instead requires a minimum limit of $100,000 to satisfy claims for all of the various components of injury.

In addition, the Court notes that when a statute is ambiguous, courts give deference to an interpretation of the statute by the department charged with administering it.  Estate of Marion Atkinson v. Minnesota Dep't of Human Servs., 564 N.W.2d 209, 213 (Minn. 1997); Krumm v. R.A. Nadeau Co., 276 N.W.2d 641, 644 (Minn. 1979).  The Department of Public Safety is the agency responsible for interpreting and enforcing Minnesota's liquor laws.  Minn. Stat. § 340A.201.  The Department informs liquor license applicants on its website that in order to obtain a license, they must acquire insurance with minimum limits of $100,000 and a $300,000 aggregate per policy year per licensed location.  See http://www.dps.state.mn.us/alcgamb/alcenf/process.htm.  Therefore, the Department's interpretation is in accord with the Court's interpretation that the statute requires a minimum limit of $100,000 rather than $210,000.

---

[6] The Johnsons argue that Scottsdale's $100,000 liability limit for all injury caused by the serving of alcohol to one person works an unfair result because it is possible to imagine a case in which the serving of alcohol to one person could cause damages of more than $100,000.  While true, it does not lead to a different outcome in this case.  The statute requires bars to obtain insurance with minimum limits of $100,000, and the policy at issue clearly provides a limit for all injury caused by the serving of alcohol to one person of $100,000.

In conclusion, liquor license applicants choosing to satisfy their financial responsibility requirements with insurance as required by Minn. Stat. § 340A.409 must obtain an insurance policy with a minimum limit of $100,000.  Scottsdale did not violate Minn. Stat. § 340A.409 because the liquor license statute does not directly apply to Scottsdale, a liability insurance carrier, but even if it did, Scottsdale provided insurance coverage with the minimum limits required by the statute.[7]

---

[7] In light of this finding, there is no need to address the parties' further arguments concerning contract reformation in the event that the insurance policy had violated Minn. Stat. § 340A.409.

**IV. CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendants' Motion for Certification to Minnesota Supreme Court is **DENIED**.

2. Plaintiff's Motion for Summary Judgment is **GRANTED**.  Scottsdale's "Each

Common Cause" Limit of $100,000 applies to the damages alleged in the dram shop action.

3. Defendants' counterclaims are **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 7, 2005.

13